Cite as: 565 U. S. ____ (2012)          1



SCALIA, J., dissenting

# SUPREME COURT OF THE UNITED STATES

No. 10–63

## CORY R. MAPLES, PETITIONER v. KIM T. THOMAS, COMMISSIONER, ALABAMA DEPARTMENT OF CORRECTIONS

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

[January 18, 2012]

JUSTICE SCALIA, with whom JUSTICE THOMAS joins, dissenting.

The Alabama Court of Criminal Appeals held that Cory Maples' appeal from the denial of his state postconviction petition was barred because he had not filed a notice of appeal within the allotted time. The Court now concludes that Maples has established cause for his procedural default by reason of abandonment by his attorneys. Because I cannot agree with that conclusion, and because Maples' alternative argument fares no better, I would affirm the judgment.

## I

### A

Our doctrine of procedural default reflects, and furthers, the principle that errors in state criminal trials should be remedied in state court. As we have long recognized, federal habeas review for state prisoners imposes significant costs on the States, undermining not only their practical interest in the finality of their criminal judgments, see *Engle* v. *Isaac*, 456 U. S. 107, 126–127 (1982), but also the primacy of their courts in adjudicating the constitutional rights of defendants prosecuted under state law, *id.*, at 128. We have further recognized that "[t]hese costs are

particularly high ... when a state prisoner, through a
procedural default, prevents adjudication of his constitu-
tional claims in state court." *Coleman* v. *Thompson,* 501
U. S. 722, 748 (1991). In that situation, the prisoner has
"deprived the state courts of an opportunity to address
those claims in the first instance," *id.,* at 732, thereby
leaving the state courts without "a chance to mend their
own fences and avoid federal intrusion," *Engle,* 456 U. S.,
at 129. For that reason, and because permitting federal-
court review of defaulted claims would "undercu[t] the
State's ability to enforce its procedural rules," *ibid.,* we
have held that when a state court has relied on an ade-
quate and independent state procedural ground in denying
a prisoner's claims, the prisoner ordinarily may not obtain
federal habeas relief. *Coleman,* 501 U. S., at 729–730.

To be sure, the prohibition on federal-court review of
defaulted claims is not absolute. A habeas petitioner's de-
fault in state court will not bar federal habeas review if
"the petitioner demonstrates cause and actual prejudice,"
*id.,* at 748—"cause" constituting "something *external* to
the petitioner, something that cannot fairly be attributed
to him," that impeded compliance with the State's proce-
dural rule, *id.,* at 753. As a general matter, an attorney's
mistakes (or omissions) do not meet the standard "because
the attorney is the petitioner's agent when acting, or
failing to act, in furtherance of the litigation, and the
petitioner must 'bear the risk of attorney error.'" *Ibid.*
(quoting *Murray* v. *Carrier,* 477 U. S. 478, 488 (1986)).
See also *Link* v. *Wabash R. Co.,* 370 U. S. 626, 633–634,
and n. 10 (1962).

When an attorney's error occurs at a stage of the pro-
ceedings at which the defendant has a constitutional right
to effective assistance of counsel, that error may constitute
cause to excuse a resulting procedural default. A State's
failure in its duty to provide an effective attorney, as
measured by the standard set forth in *Strickland* v. *Wash-*



*ington*, 466 U. S. 668 (1984), makes the attorney's error chargeable to the State, and hence external to the defense. See *Murray, supra*, at 488. But when the client has no right to counsel—as is the case in the postconviction setting, see *Pennsylvania* v. *Finley*, 481 U. S. 551, 555 (1987)—the client bears the risk of all attorney errors made in the course of the representation, regardless of the egregiousness of the mistake. *Coleman, supra*, at 754 ("[I]t is not the gravity of the attorney's error that matters, but that it constitutes a violation of petitioner's right to counsel, so that the error must be seen as an external factor").

### B

In light of the principles just set out, the Court is correct to conclude, *ante*, at 14, that a habeas petitioner's procedural default may be excused when it is attributable to abandonment by his attorney. In such a case, *Coleman*'s rationale for attributing the attorney's acts and omissions to the client breaks down; for once the attorney has ceased acting as the client's agent, "well-settled principles of agency law," 501 U. S., at 754, no longer support charging the client with his lawyer's mistakes. The attorney's mistakes may therefore be understood as an "external factor," *ibid.*, and in appropriate circumstances may justify excusing the prisoner's procedural default.

I likewise agree with the Court's conclusion, *ante*, at 15, that Maples' two out-of-state attorneys of record, Jaasi Munanka and Clara Ingen-Housz, had abandoned Maples by the time the Alabama trial court entered its order denying his petition for postconviction relief. As the Court observes, *ante*, at 15–16, without informing Maples or seeking leave from the Alabama trial court to withdraw from Maples' case, both Munanka and Ingen-Housz left Sullivan & Cromwell's employ and accepted new positions that precluded them from continuing to represent Maples.

SCALIA, J., dissenting

This conduct amounted to renunciation of their roles as
Maples' agents, see 1 Restatement (Second) of Agency
§119, Comment *b* (1957) (hereinafter Restatement 2d),
and thus terminated their authority to act on Maples'
behalf, *id.*, §118.  As a result, Munanka's and Ingen-
Housz's failure to take action in response to the trial
court's order should not be imputed to Maples.

It is an unjustified leap, however, to conclude that Ma-
ples was left unrepresented during the relevant window
between the Alabama trial court's dismissal of his post-
conviction petition and expiration of the 42-day period for
filing a notice of appeal established by Alabama Rule of
Appellate Procedure 4(a)(1) (2009).  Start with Maples'
own allegations: In his amended federal habeas petition,
Maples alleged that, at the time he sought postconvic-
tion relief in Alabama trial court, he "was represented by
Sullivan & Cromwell of New York, New York."  App. 256.
Although the petition went on to identify Munanka and
Ingen-Housz as "the two Sullivan lawyers handling the
matter," *id.*, at 257, its statement that Maples was "repre-
sented" by the firm itself strongly suggests that Maples
viewed himself as having retained the services of the firm
as a whole, a perfectly natural understanding.  "When a
client retains a lawyer who practices with a firm, the
presumption is that both the lawyer and the firm have
been retained."  1 Restatement (Third) of the Law Govern-
ing Lawyers §31, Comment *f*, p. 222 (1998).  Admittedly,
in connection with the attempt before the Alabama trial
court to extend the time for appeal, Sullivan & Cromwell
partner Marc De Leeuw submitted an affidavit stating
that the firm's lawyers "handle *pro bono* cases on an indi-
vidual basis" and that the lawyers who had appeared in
Maples' case had followed that practice, "attempt[ing] not
to use the firm name on correspondence or court papers."
App. to Pet. for Cert. 257a.  But Maples' habeas petition is
the pleading that initiated the current litigation; and



surely the allegations that it contained should be given priority over representations made to prior courts.*

In any case, even if Maples had no attorney-client relationship with the Sullivan & Cromwell firm, Munanka and Ingen-Housz were surely not the only Sullivan & Cromwell lawyers who represented Maples on an individual basis. De Leeuw's affidavit acknowledged that he had "been involved in [Maples'] case since the summer of 2001," *ibid.*, roughly a year before Munanka and Ingen-Housz left Sullivan & Cromwell, and it further stated that after "Ms. Ingen-Housz and Mr. Munanka" learned of the court's initial order denying the State's motion to dismiss Maples' postconviction petition in December 2001, "the lawyers working on this case for Mr. Maples prepared for the evidentiary hearing" Maples had requested, *id.,* at 258a.   Moreover, when Sullivan & Cromwell attorney Felice Duffy filed a motion to appear *pro hac vice* before the Alabama trial court in connection with the attempt to extend the deadline, she stated that she had "worked on [Maples'] case since October 14, 2002," App. 231, months before the procedural default took place.

According to the Court, see *ante,* at 17, De Leeuw's affidavit does not make clear how he was "involved" in

───────────

*The Court says that the allegations in Maples' own habeas petition are not "persuasive evidence," *ante,* at 17–18, n. 8, because Maples' lawyers at Sullivan & Cromwell labored under a conflict of interest when they prepared the document.   This is a curious point, since the effect of Maples' statement was to *implicate* Sullivan & Cromwell as a firm in missing the filing deadline. The conflict would have induced the Sullivan & Cromwell lawyers to *exonerate* the firm.   To be sure, as the case later developed (at this stage abandonment had not yet been conceived as the litigating strategy), it would have been in Maples' interest to say he had no lawyers.   But the issue the petition's statement raises is not whether Maples was cleverly represented; it is whether the statement was *true.*   And if Sullivan & Cromwell's involvement in preparing the petition has any bearing upon that, it only reinforces the truth.

MAPLES *v.* THOMAS

SCALIA, J., dissenting

Maples' case or whether lawyers other than Munanka and
Ingen-Housz were among those who prepared for the
anticipated evidentiary hearing; and Duffy's motion does
not make clear what her "wor[k]" entailed.  But there is
little doubt that Munanka and Ingen-Housz were not the
only attorneys who engaged in the preparations; and that
De Leeuw was "involved" and Duffy "worked" as lawyers
for Maples (what other role could they have taken on?).
De Leeuw's distinction between "Ms. Ingen-Housz and Mr.
Munanka" and "the lawyers working on his case for Mr.
Maples" would have been senseless if the latter category
did not extend beyond the two named attorneys.

   In sum, there is every indication that when the trial
court entered its order dismissing Maples' postconviction
petition in May 2003, Maples continued to be represented
by a team of attorneys in Sullivan & Cromwell's New York
office.  The Court nonetheless insists that the actions of
these attorneys are irrelevant because they had not been
admitted to practice law in Alabama, had not entered
appearances in the Alabama trial court, and had not
sought to substitute for Munanka and Ingen-Housz.  See
*ante,* at 18–19.  The Court does not, however, explain why
these facts establish that the attorneys were not Maples'
agents for the purpose of attending to those aspects of the
case that did not require court appearance—which would
certainly include keeping track of orders issued and filing
deadlines.  The Court's quotation from the Restatement of
Agency, *ante,* at 18, that the "failure to acquire a qualifica-
tion by the agent without which it is illegal to do an au-
thorized act . . . terminates the agent's authority to act," 1
Restatement 2d, §111, at 290, omits the crucial condition
contained at the end of the section: "if thereafter he [the
agent] should infer that the principal, if he knew the facts,
would not consent to the further exercise of the authority."
There was no basis whatever for these attorneys to infer
that Maples no longer wanted them to represent him,



simply because they had *not yet* qualified before the Alabama court. Though it would have been "illegal" for these attorneys to file a notice of appeal without being authorized to practice in Alabama, nothing prevented them from first seeking to secure admission to practice, as Munanka and Ingen-Housz initially had done, and *then* filing a notice of appeal.

It would create a huge gap in our *Coleman* jurisprudence to disregard all attorney errors committed before admission to the relevant court; and an even greater gap to disregard (as the Court suggests) all errors committed before the attorney enters an appearance. Moreover, even if these attorneys cannot be regarded as Maples' agents for purposes of conducting the Alabama litigation, they were *at least* his agents for purposes of advising him of the impending deadline. His unawareness was the fault of counsel who were his agents, and must be charged to him. What happened here is simply "[a]ttorney ignorance or inadvertence" of the sort that does not furnish cause to excuse a procedural default. *Coleman,* 501 U. S., at 753.

But even leaving aside the question of Maples' "unadmitted" attorneys at Sullivan & Cromwell, Maples had a fully admitted attorney, who had entered an appearance, in the person of local counsel, John Butler. There is no support for the Court's conclusion that Butler "did not even begin to represent Maples." *Ante,* at 19. True, the affidavit Butler filed with the Alabama trial court in the proceeding seeking extension of the deadline stated that he had "no substantive involvement" with the case, and that he had "agreed to serve as local counsel only." App. to Pet. for Cert. 255a. But a disclaimer of "substantive involvement" in a case, whether or not it violates a lawyer's ethical obligations, see *ante,* at 19, is not equivalent to a denial of any agency role at all. A local attorney's "nonsubstantive" involvement would surely include, *at a minimum,* keeping track of local court orders and advising

SCALIA, J., dissenting

"substantive" counsel of impending deadlines.   Nor did
Butler's explanation for his failure to act when he received
a copy of the trial court's order sound in abandonment.
Butler did not say, for instance, that he ignored the order
because he did not consider Maples to be his client.   In-
stead, based on "past practice" and the content of the
order, Butler "assumed" that Maples' lawyers at Sullivan
& Cromwell would receive a copy.   App. to Pet. for Cert.
256a.

   The Court gets this badly wrong when it states that
"Butler's failure even to place a phone call to the New
York firm" demonstrates Butler's "disclaimer of any genu-
inely representative role."   *Ante*, at 19.   By equating the
very attorney error that contributed to Maples' procedural
default with the absence of an agency relationship, the
Court ensures that today's opinion will serve as a template
for future habeas petitioners seeking to evade *Coleman*'s
holding that ineffectiveness of postconviction counsel will
not furnish cause to excuse a procedural default.   See 501
U. S., at 752–754.   The trick will be to allege, not that
counsel was ineffective, but rather that counsel's ineffec-
tiveness demonstrates that he was not a genuinely repre-
sentative agent.   No precedent should be so easily circum-
vented by word games, but the damage is particularly
acute when the affected precedent is so firmly "grounded
in concerns of comity and federalism."   *Id.*, at 730.

   The Court's last-gasp attempt to justify its conclusion
that Butler was not Maples' agent is to point out that a
prosecutor sent a letter to Maples directly, informing him
of the defaulted appeal.   See *ante*, at 20.   The Court rea-
sons that the prosecutor must have thought that Maples
had been abandoned by his lawyers, since to communicate
with a represented party would have been a violation of
ethical standards.   *Ibid.*   But even if this supposition is
correct, it is hard to understand what it proves.   What
matters, after all, is not whether the prosecutor *thought*

SCALIA, J., dissenting

the time allowed, except as allowed by Federal Rule of
Appellate Procedure (4)(a)." And although Federal Rule
of Appellate Rule 4(a)(6) in turn provides that the time for
filing an appeal can be reopened when a litigant did not
receive notice, it establishes 180 days after the judgment
or order is entered as the outer limit by which a motion to
reopen must be filed. See Fed. Rule App. Proc. 4(a)(6)(B).

There is no need to grapple with this question, however,
because Butler received a copy of the trial court's order.
"Under our system of representative litigation, 'each party
. . . is considered to have notice of all facts, notice of which
can be charged upon [his] attorney.'" *Irwin* v. *Department
of Veterans Affairs*, 498 U. S. 89, 92 (1990) (quoting *Link*
v. *Wabash R. Co.*, 370 U. S. 626, 634 (1962)). The notice to
Butler was therefore constitutionally sufficient.

\*          \*          \*

One suspects that today's decision is motivated in large
part by an understandable sense of frustration with the
State's refusal to waive Maples' procedural default in
the interest of fairness. Indeed, that frustration may well
explain the Court's lengthy indictment of Alabama's gen-
eral procedures for providing representation to capital
defendants, *ante,* at 2–4, a portion of the Court's opinion
that is so disconnected from the rest of its analysis as to be
otherwise inexplicable.

But if the interest of fairness justifies our excusing
Maples' procedural default here, it does so whenever a
defendant's procedural default is caused by his attorney.
That is simply not the law—and cannot be, if the states
are to have an orderly system of criminal litigation con-
ducted by counsel. Our precedents allow a State to stand
on its rights and enforce a habeas petitioner's procedural
default even when counsel is to blame. Because a faithful
application of those precedents leads to the conclusion that
Maples has not demonstrated cause to excuse his proce-

*73*

SCALIA, J., dissenting

dural default; and because the reasoning by which the
Court justifies the opposite conclusion invites future evis-
ceration of the principle that defendants are responsible
for the mistakes of their attorneys; I respectfully dissent.